UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

FEB 2 8 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-165-GWU

GARY W. LAMBDIN,                                          PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity?
   If yes, the claimant is not disabled. If no, proceed to Step 2.
   See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical
   or mental impairment(s)? If yes, proceed to Step 3. If no, the
   claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any
   impairment(s) significantly limiting the claimant's physical or
   mental ability to do basic work activities? If yes, proceed to
   Step 4. If no, the claimant is not disabled. See 20 C.F.R.
   404.1520(c), 404.1521, 416.920(c), 461.921.

1

Lambdin

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Lambdin

> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Lambdin

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Gary W. Lambdin, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of ischemic heart disease (status post stenting times two), A generalized anxiety disorder, depression, and a panic disorder. (Tr. 16). Nevertheless, based in part on the testimony of a medical expert (ME) and a vocational expert (VE), the ALJ determined that Mr. Lambdin retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 24-7). The Appeals Council declined to review, and this action followed.

At the most recent of several administrative hearings, the ALJ had asked the VE whether a person of the plaintiff's age, which was classified as a "younger person... age 49 and below," twelfth grade education, and unskilled work experience could perform any jobs if he were limited to "light" level exertion, that required no more than occasional climbing and which did not involve exposure to temperature

7

extremes. (Tr. 464). The ALJ also indicated that the plaintiff retained the ability to understand, remember, and carry out simple instructions and repetitive tasks in a low stress, object- focused work setting. (Id.). The VE responded, both at the hearing and later in additional written testimony, that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 151, 464-68).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence. For the reasons to be set out below, the Court finds that it is not.

Mr. Lambdin alleged disability due to nervousness, heart problems, and swelling of the extremities. (Tr. 123).

Although the medical evidence shows that Mr. Lambdin underwent heart surgery in May, 2000, and again in October, 2001 (Tr. 155-7, 184, 232), there is no indication from treating or examining sources of greater limitations than found by the ALJ. His restrictions follow the opinions of non-examining state agency reviewing physicians, except for reducing the plaintiff's exertional level to "light" from "medium." (Tr. 270-8, 298-306). The plaintiff argues that a statement from his treating cardiologist, Dr. M. Jawed, dated November 19, 2003, was not given sufficient weight by the ALJ. However, the physician gives no specific limitations and merely commented that "[a]lthough I am not specialized in disability determination it is my

8

opinion that Mr. Gary Lambdin's physical and mental condition very much limits his ability for gainful employment." (Tr. 333). This statement does not suggest that the plaintiff is incapable of any employment, and provides no guidance in terms of specific functional restrictions. Ultimately, it is not inconsistent with the ALJ's functional capacity finding.

Regarding the mental restrictions, however, a remand will be required.

The plaintiff underwent psychiatric treatment by Dr. Cecelia Carpio-Carigaba, on referral from Dr. Jawed, beginning in June, 2001. (Tr. 243). Mr. Lambdin complained of depression and anxiety, complained of nervousness, poor memory, poor sleep, and not wanting to be around people. (Id.). He was initially given a diagnosis of major depression and panic attacks with severe agoraphobia, with a Global Assessment of Functioning (GAF) score of 50-60. (Tr. 243, 327). Dr. Carpio prescribed Paxil. (Id.). As her treatment went on the over the next several months, Dr. Carpio noted that the plaintiff still had a depressed mood and restricted affect, and added the medication Ativan. (Tr. 241-2). The plaintiff told Dr. Carpio that his condition deteriorated after his second heart surgery, which took place after he started treatment with her, but he described his mood swings and anxiety as better in December, 2001. (Tr. 239-40).

These were the most recent office notes available to the ME, Dr. Neal Lewis, who testified at the second administrative hearing on May 3, 2004. (Tr. 428).

9

Subsequently, counsel for the plaintiff submitted additional materials from Dr. Carpio, including a letter dated April 1, 2003 stating that Mr. Lambdin had been a patient since June 27, 2001, had been diagnosed as having major depression and panic attacks with severe agoraphobia, and had shown very little improvement despite being tried on multiple medications. (Tr. 327). His anxiety continued to be symptomatic, and "he continues to be isolated [and] he does not even leave the house except to go to doctor's appointments." (Id.). Dr. Carpio stated that because of this, Mr. Lambdin was not able to work "at this time," and his prognosis was poor "given the severity of the symptoms as well as the chronicity of the illness." (Id.). At some point, Dr. Carpio also apparently completed a Mental Medical Assessment form indicating that Mr. Lambdin had a "poor" (defined as "seriously limited but not precluded") ability to relate to co-workers, deal with the public, deal with stresses, interact with supervisors, and relate predictably in social situations. (Tr. 330-1).

Dr. Lewis, the ME, testified that there was only evidence of five visits to Dr. Carpio between June and December, 2001, and while the subsequent letter indicated that she had seen him well beyond that date, there was no documentation available. (Tr. 437). He felt Dr. Carpio's notes indicated that she was providing medication management, and she did not appear to be giving any counseling or psychotherapy. (Id.). Her GAF score indicated restrictions in the "moderate" range. (Id.).

10

Lambdin

During the ME's testimony, the ALJ elicited the information that Mr. Lambdin had been treated by Dr. Carpio through November, 2003. (Tr. 444). The ALJ requested that counsel for the plaintiff obtain additional office notes from Dr. Carpio for the period between December, 2001 and November, 2003. (Tr. 445, 455). These records were eventually submitted (Tr. 364-83), but were apparently never reviewed by the ME. They show that Dr. Carpio was treating the plaintiff regularly at the time she wrote the April 1, 2003 letter indicating that he would not be able to work. (Tr. 327). They also appear to be at odds with the ME's assumption that Dr. Carpio was providing only medication management, as there were also notes from a licensed clinical social worker in Dr. Carpio's office indicating that the plaintiff was sleeping a great deal and avoiding the public, and that efforts were being made to get him to go into public places. (E.g., Tr. 366-7).

The plaintiff maintains on appeal that it was error to rely on the opinion of a non-examining medical expert, testifying via teleconference, who did not have access to the additional records from the treating psychiatrist. The Sixth Circuit has indicated that, while the opinion of a non-examiner may be accepted over that of an examiner, the non-examiner should have had access to the entire record and clearly indicated the reasons for his difference of opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Circuit 1994). In this case, where the treating physician's opinion was that the plaintiff was significantly more limited than found by the ALJ, the medical expert's

11

Lambdin

testimony provides the only support for the administrative decision. Since the additional evidence from the treating source calls many of the ME's conclusions into question, this portion of the administrative decision is not supported by substantial evidence.

The only other psychological examiner to express an opinion was Dr. Blaine Pinaire, a psychologist, who conducted a consultative evaluation of the plaintiff on January 21, 2004. (Tr. 334). He also reviewed the 2001 office notes from Dr. Carpio. (Tr. 343). Dr. Pinaire administered testing showing a full-scale IQ score of 74, sixth grade reading ability, a third-grade spelling ability, and a seventh grade arithmetic ability. (Tr. 338). He diagnosed a recurrent major depressive disorder in partial remission, having disorder with agoraphobia (by history), and borderline intellectual functioning. (Tr. 339). He assigned a GAF score of 48. (Id.). Dr. Pinaire also prepared a Mental Medical Assessment form indicating that the plaintiff would have a "seriously limited but not precluded" ability in most areas. (Tr. 341-2). Much of the ME's testimony was focused on criticism of Dr. Pinaire's conclusions and methodology. (Tr. 437-45). However, Dr. Pinaire's conclusions regarding *functional capacity* are not critical in the present case, given the restrictions from the treating source.

Regarding the educational achievement levels found by Dr. Pinaire, 20 C.F.R. Section 416.964(b) indicates that a claimant's educational abilities may be higher or

12

Lambdin

lower than a numerical grade level that he completed, but the numerical grade level will be used if there is no other evidence to contradict it.  In the present case, the achievement scores would appear to be somewhat lower than the high school level education assumed by the ALJ in the hypothetical question, as conceded by the ME, although he also testified that someone with a sixth grade reading and seventh grade arithmetic ability would have "a shot" at passing the GED examination.  (Tr. 446-7).  He also admitted, however, that it was possible that the plaintiff had lost mental capacity since passing the GED examination 15 years earlier.  (Tr. 447).  Since the case is being remanded on other grounds, an alternative hypothetical question may be framed by the ALJ or by counsel for the plaintiff which would include the lower educational level implied by the achievement scores.

The decision will be remanded for further consideration.

This the ___28___ day of February, 2006.

G. WIX UNTHANK,
Senior Judge

13